ELLERY R. HUME V. CLARENCE E. MILLER ET AL.
JAMES M. WECKERLEY, APPELLEE, V. GLOBE LOAN & TRUST
COMPANY ET AL., APPELLANTS.

FILED FEBRUARY 22, 1906.    No. 14,155.

**Insolvent Banks: BOND OF OFFICERS.** By the execution of a bond to
the state as provided by section 34, chapter 8, Compiled Statutes,
by the officers of an insolvent bank, conditioned upon the full
settlement of all the liabilities of such bank, the officers and
sureties assume the burdens of the bank's liquidation, and can-
not use the assets in paying the expenses thereof to the prejudice
of creditors.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Affirmed.*

*A. S. Churchill,* for appellants.

*E. Wakeley* and *A. C. Wakeley, contra.*

EPPERSON, C.

The plaintiff obtained a decree for the foreclosure of a
tax sale certificate in the district court for Douglas county,
which resulted in a judicial sale of the land. The sale
was confirmed on the 7th day of April, 1902, and there
remained in the hands of the clerk of the court a surplus
of $510.93, after paying the amount due plaintiff and the
costs of foreclosure. When the suit was begun, the land
was incumbered by a mortgage given by the defendants
Miller and Jacks to the Globe Loan & Trust Company for
an amount greater than the surplus. No part of this
mortgage has ever been paid, and the surplus funds must
be paid to whomsoever is entitled thereto under and by
virtue of the aforesaid mortgage, according to their re-
spective rights and equities. The original parties to the
suit are not concerned, and the issues are here presented
by interveners. For a full understanding of the claims of
the respective parties, a brief review of the history of the
Globe Savings Bank from June, 1896, is necessary.

In 1896 an application was made by the attorney general in the district court for Douglas county for the appointment of a receiver for the Globe Savings Bank, hereinafter referred to as the bank.   On the 9th day of June, 1896, the Globe Savings Bank, as principal, and Cadet Taylor, David C. Mount, Globe Loan & Trust Company and Henry O. Devries, since deceased, as sureties, executed a bond to the state, and thereby obligated themselves to settle in full all the liabilities of the Globe Savings Bank within three years from June 26, 1896.   Upon the execution of this bond the application for the appointment of a receiver was withdrawn, and the assets of the bank, then in the custody of a state bank examiner, were returned, and the settlement of the bank's business was entrusted to Cadet Taylor.   Among its assets were the notes and mortgage given by Miller and Jacks, which had been assigned by the Globe Loan & Trust Company to the bank.   Some of the debts of the bank had not been paid within the time provided in said bond.   About the 1st of November, 1899, a suit was instituted against the bank and the sureties upon the aforesaid bond by Elizabeth J. Dennis.   The appellant, the Honorable Arthur S. Churchill, was employed as an attorney at law by the bank, through the agency of Cadet Taylor, to defend the bank in this and other suits that it was then contemplated would be instituted against the same parties.   Appellant demanded security for the payment of his fees, and Cadet Taylor, acting for the bank, pledged to appellant the Miller and Jacks notes and mortgage and about $400 in cash.   By agreement the property pledged was delivered to W. B. Taylor, who was authorized to pay the money to appellant as his fees were earned, and with the further agreement that the notes and mortgage were to secure appellant for fees earned in excess of the amount of cash thus deposited.   The notes and mortgage were afterwards pledged, with the consent of appellant, to one Dunham, to indemnify him against loss on an appeal bond which he signed as surety for the bank in a cause appealed from the county court.   The notes and mortgage

54

were returned to appellant February 20, 1904. Appellant, as an attorney at law, appeared in many suits for the bank, and for Cadet Taylor, and other sureties upon said bond, in actions instituted upon the bond by the bank's creditors, and in other actions in form of creditors' bills. He now claims there is a balance of $500 due to him from the bank, the $400 deposited with W. B. Taylor being exhausted. In his petition for intervention herein filed, appellant claims the surplus funds as pledgee of the Miller and Jacks notes and mortgage. On the 30th day of March, 1901, the appellee, James M. Weckerly, obtained a judgment against the bank and against the sureties upon the bond given to the state for $1,405.19. An execution was issued upon this judgment and returned *nulla bona.* On February 2, 1904, appellee made application to the district court under the provisions of section 532 of the code, to have the surplus funds applied upon his judgment.

At all times herein referred to, the bank was insolvent. The bank's interests in the litigation in which the appellant was employed was managed by Cadet Taylor. He and the other sureties upon the bond were involved in the same litigation, their rights being co-extensive with those of the bank. Appellant was attorney for all of these parties. The bank being insolvent, the sureties upon its bond were the more concerned in the actions instituted by the bank's creditors. Under these circumstances it seems that the bank existed in name only. Cadet Taylor was primarily liable to the attorney employed, he was individually liable, and in the employment of the attorney he acted also for his cosureties, and the pledging of the bank's assets was in the nature of a pledge to secure his personal obligations. The sureties had no greater rights than stockholders to the assets of the bank. "The property and assets of a banking corporation organized under the laws of this state, after it has ceased to carry on a banking business, are a trust fund for the payment of its debts. The rights of the creditors to the corporate property, so far as it is necessary to meet their demands, are superior to those of the stock-

holders, or the assignee of an insolvent stockholder." *State v. Commercial State Bank*, 28 Neb. 677.

The whole difficulty in this case seems to 1 that, subsequently to the giving of the bond, the sureties themselves became insolvent; at least, executions against them accomplish nothing. It has been held by this court that "directors of an insolvent corporation cannot take advantage of their position to obtain a preference of debts owing by the corporation to themselves" (*Tillson v. Downing*, 45 Neb. 549) ; and that "a mortgage executed by an insolvent corporation to secure a debt due from it to one of its officers or directors is illegal and void." *Stough v. Ponca Mill Co.*, 54 Neb. 500. And in *Tillson v. Downing*, 45 Neb. 549, it was held that a mortgage given by an insolvent corporation to secure a debt for which its directors are personally bound is likewise void. The same reasoning would extend that rule to a case where, as in the case at bar, the property was pledged to pay the expenses of defeating actions which the directors were personally interested in defeating. Cadet Taylor was not only a surety upon the bond, but also a director and vice-president of the bank. We hold that by the execution of the bond to the state, Cadet Taylor and his cosureties assumed the burdens of the bank's liquidation, and cannot use the assets of the bank in paying the expenses thereof to the prejudice of the creditors.

Appellant claims that the bank had authorized Cadet Taylor to make this pledge, or ratified it, and that the bank could not have maintained an action to recover the surplus funds in controversy, and argues that for this reason the appellee cannot recover. He cites in support of this *German Nat. Bank v. First Nat. Bank*, 59 Neb. 7. It is there decided that a judgment creditor can maintain such action only where the debtor had himself an actionable demand at the time the suit was instituted. In that case the creditor claimed the right to apply upon his judgment money which had been paid to another creditor by the judgment debtor, or by an agent whose act was ratified. By such payment the debtor, of course, lost all dominion over the

funds, and his creditors could not proceed under section
532 of the code. As to the funds in controversy, the bank
had not lost all its rights therein, and, had a receiver been
appointed, he could have recovered even as against the ap-
pellant. The rule in *German Nat. Bank v. First Nat.
Bank, supra,* is not applicable.

We recommend that the judgment of the lower court in
favor of the appellee be affirmed.

AMES, C., concurs.

OLDHAM, C. I concur only in the conclusion.

By the Court: For the reasons appearing in the fore-
going opinion, the judgment of the district court is

AFFIRMED.